UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ROBERT MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:20-cv-00391-JPH-MJD |
| ) | |
| B. VAUGHN, ) | |
| RICHARD BROWN, ) | |
| ) | |
| Defendants. ) | |

**ENTRY SCREENING COMPLAINT, DISMISSING CLAIMS,
AND DIRECTING SERVICE OF PROCESS**

The plaintiff, Robert Martin, is currently an inmate at Wabash Valley Correctional Facility ("WVCF"). Because Mr. Martin is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint.

**I. Screening Standard**

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints such as that filed by Mr. Martin are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

1

## II. The Complaint

Mr. Martin names two defendants in his complaint: (1) Sgt. B. Vaughn and (2) WVCF Warden Richard Brown. Dkt. 1. At all times relevant to his complaint, Mr. Martin has been incarcerated at WVCF and has been diagnosed with type 1 diabetes, which requires him to use an insulin pump. *Id.* at 4. Mr. Martin alleges that on August 14, 2019, he had a diabetic episode while in his housing cell that caused him to be in a stupor, incoherent, and unaware of his surroundings. *Id.* at 5. Mr. Martin's cellmate informed the staff of Martin's condition and medical was called but did not answer the phone. *Id.* The officers who responded to the request for help did not place an emergency medical alert, a signal 3000, which would have taken Mr. Martin to the infirmary. *Id.*

Mr. Martin alleges that Sgt. Vaughn came to his cell, knew he was diabetic, and attempted to get him to go to the infirmary by talking to him for 45 minutes, but due to his condition, Mr. Martin could not understand what was happening. *Id.* at 6. Rather than calling a signal 3000, Sgt. Vaughn treated the situation "as a disciplinary matter and gave Martin an order to submit to having handcuffs placed on him" that Mr. Martin could not comply with due to his lack of understanding the order. *Id.* at 6-7. Mr. Martin alleges that Sgt. Vaughn used excessive force by administering OC spray to his face that caused burning of his eyes, face, and lips. *Id.* at 7. Mr. Martin alleges he was saturated with the chemical agent and suffered chemical burns and irritation for a week after the incident. *Id.*

Mr. Martin alleges that he was then taken to the infirmary by wheelchair where it was determined that he had suffered a very low blood sugar count. *Id.* Mr. Martin received a report of conduct from Sgt. Vaughn for refusal to comply with an order—which he alleges was a false conduct report that was issued to cover up the officer's wrongful actions. *Id.* at 8. The conduct report was later dismissed. *Id.*

Further, Mr. Martin alleges that Warden Brown is responsible for training staff regarding the use of force and how to discern medical emergencies from disciplinary incidents. *Id.* at 2. He claims that Warden Brown has a "widespread custom, practice, and policy whereby he and staff at this facility seem to use illegal uses of force on a routine basis, because they are not properly trained [or] properly supervised," or disciplined when excessive force is used. *Id.* at 8.

Mr. Martin also brings a state law claim of emotional distress. He seeks declaratory relief and compensatory damages and brings his claims against the defendants in their individual and official capacities. *Id.* at 1, 13.

### III. Discussion of Claims

Mr. Martin states his legal claims as: (1) Sgt. Vaughn used excessive force against him while he was experiencing a medical emergency in violation of the Fifth, Fourteenth, and Eighth Amendments; (2) Sgt. Vaughn wrote a false report of conduct against him in violation of the First, Fifth, Fourteenth, and Eighth Amendments; (3) Warden Brown maintains a custom, practice, or policy of allowing staff to use excessive force and failing to train and discipline staff, entitling Martin to recover under *Monell*; and (4) a state law claim of emotional distress. *Id.* at 11-12.

**A. Dismissed Claims**

**1. Claims Against Warden Brown**

The Warden's federal liability is premised on *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978). A *Monell* claim is established by showing "'(1) an action pursuant to a municipal policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal action was the 'moving force' behind the constitutional injury." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020) (quoting *Hall v. City of Chi.*, 953 F.3d 945, 950 (7th Cir. 2020)). In this case,

there is no municipal defendant. The Warden is a state actor. In addition, a *Monell* claim cannot be brought against an individual in his individual capacity. *See Johnson v. Dykstra*, No. 3-17-cv-00071-PPS-MGG, 2019 WL 2270356, at *3 (N.D. Ind. May 24, 2019) ("A party may not assert a *Monell* claim against prison officers in their individual capacities. Recall that under section 1983, only municipalities may be held liable for constitutional violations caused by their official policy including unwritten custom.").

Similarly, even if the "failure to train claim" is not understood to be brought pursuant to the theory recognized in *Monell*, it is still subject to dismissal. This is because "failure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Brown v. Budz,* 398 F.3d 904, 918 (7th Cir. 2005) (quoting *Sanville v. McCaughtry,* 266 F.3d 724, 739-40 (7th Cir. 2001)).

Finally, any other constitutional claims brought against the Warden in his individual capacity must be dismissed. This is because there are no factual allegations that suggest that the Warden was personally responsible for directing Sgt. Vaughn's actions on August 14, 2019. "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018); *see also Olive v. Wexford Corp.*, 494 F. App'x. 671, 673 (7th Cir. 2012) ("[A] supervisor is not liable just because a complaint is made and an effective solution is not forthcoming.").

Mr. Martin also asserts an intentional infliction of emotional distress claim ("IIED") against the Warden. To establish IIED under Indiana law, Mr. Martin would have to show that the Warden, by extreme or outrageous conduct, intentionally or recklessly caused him severe

4

emotional distress. *Serino v. Hensley*, 735 F.3d 588, 595 (7th Cir. 2013) (citing *Cullison v. Medley,* 570 N.E.2d 27, 31 (Ind. 1991)). The allegations in the complaint lack sufficient factual content to allow the Court to draw the reasonable inference that the defendant is liable for subjecting Mr. Martin to intentional infliction of emotional distress.

### 2. Official Capacity Claims

The defendants have been named in both their individual and official capacities. The claims against the defendants in their official capacities are dismissed as a result of the Eleventh Amendment. The Eleventh Amendment bars private lawsuits in federal court against a state that has not consented. *Joseph v. Bd. of Regents of Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Likewise, "state officials in their official capacities are also immune from suit under the Eleventh Amendment." *Joseph*, 432 F.3d at 748. There are three exceptions to the Eleventh Amendment bar. *Nuñez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016). First, a state may waive its sovereign immunity and consent to suit in federal court. *Id.* at 1044-46. Second, Congress may abrogate a state's sovereign immunity through an "unequivocal exercise" of valid legislative power through Section 5 of the Fourteenth Amendment. *Id*. Third, the Eleventh Amendment does not bar suits against state officials in their official capacities if the only relief sought is prospective injunctive relief for ongoing violations of federal law. *Id.* at 1044; *Ex Parte Young*, 209 U.S. 123, 159-60 (1908). None of these exceptions is applicable given the facts alleged in the complaint.

### 3. False Conduct Report

Prisoners do not have a constitutional right to avoid false disciplinary charges. *Lagerstrom v. Kingston*, 463 F.3d 621, 624-25 (7th Cir. 2006) (due process rights are not violated if a false conduct report is filed). Any impropriety with a conduct report and the investigation thereof would

be properly addressed during the disciplinary proceedings where the due process mandates of *Wolff v. McDonnell*, 418 U.S. 539 (1974), control. "[E]ven assuming fraudulent conduct on the part of prison officials, the protection from such arbitrary action is found in the procedures mandated by due process." *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999). "The hearing provided by [the prison disciplinary process], and the decision issued by it, accord[] [the plaintiff] all of the process that was due under the Constitution . . . ." *Id.* Moreover, Mr. Martin's complaint indicated that his conduct report was dismissed after investigation of the medical issue. Dkt. 1 at 8. Accordingly, any claims against Sgt. Vaughn based on the issuance of a false conduct report are dismissed for failure to state a claim upon which relief can be granted.

### 4. Other Constitutional Claims

"[C]onstitutional claims must be addressed under the most applicable provision." *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (internal citation omitted). A complaint "gains nothing by attracting additional constitutional labels." *Id*. To the extent Mr. Martin alleges that his excessive force claims arise under the Fifth and Fourteenth Amendments, such claims are dismissed for failure to state a claim upon which relief can be granted. This is because most applicable provision is the Eighth Amendment.

## B. Claims that Shall Proceed

The following claims shall proceed based on the allegations discussed in Part II:

1. Mr. Martin's **Eighth Amendment excessive force claim** against Sgt. Vaughn based on his personal involvement in the alleged incident.

2. Mr. Martin's **state law claim for intentional infliction of emotional distress** shall proceed against Sgt. Vaughn.

## IV. Issuance of Service

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to defendant Sgt. Vaughn, in the manner specified by Fed. R. Civ. P. 4(d). Process shall consist of the complaint

6

(docket 1), applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Entry. The **clerk is directed** to serve this IDOC employee **electronically.**

## V. Conclusion

The claims identified in Part III include all the viable claims identified by the Court. **All other claims are dismissed.** If Mr. Martin believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through November 13, 2020**, to identify those claims.

**The clerk is directed to issue service of process** to the defendant Vaughn in the manner specified in Part IV. The **clerk is directed to terminate** Warden Richard Brown from the docket.

**SO ORDERED.**

Date: 10/22/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ROBERT MARTIN
202545
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838


Electronic Service to Indiana Department of Correction:

Sgt. Vaughn

7